```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND


SYLVONTAE BISHOP et al.    *
                           *
                           *
                           *
v.                         *    Civil Action No. WMN-10-3640
                           *
                           *
MIKE LEWIS et al.          *
                           *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**MEMORANDUM**

Before the Court are motions to dismiss the Amended Complaint filed by Defendant Department of Maryland State Police (MSP), ECF No. 10, and Defendants Mike Lewis and Wicomico County Sheriff's Department (WCSD), ECF No. 9.  The motions are fully briefed.  Upon review of the submissions of the parties and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that both motions will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Sylvontae Bishop and Vernon Lefridge, Jr. are African-American.  They alleged that on December 1, 2008, while traveling on Route 13 through Wicomico County, Maryland,[1] on the

---

[1] Plaintiffs' representations are somewhat confusing as to exactly where this incident occurred.  The Amended Complaint states that it occurred on "Route 13 near Route US 95."  Am. Compl., Facts Common to All Counts ¶ 1.  Throughout the oppositions to Defendants' motions, Plaintiffs allege a pattern

way to their home state of Connecticut, they were stopped by law enforcement personnel from WCSD and MSP.  Plaintiffs were told that they were stopped for a defective brake light but were ordered out of their car and subjected to several searches.  The law enforcement officers proceeded to search the vehicle as well, despite Plaintiffs' refusal to consent to such a search.  Plaintiffs were repeatedly questioned about illegal drugs and weapons and were forced to wait in the cold while a K-9 unit was brought out to search their vehicle.  Plaintiffs further allege that Defendants "have a history of engaging in a pattern and practice of profiling, targeting, harassing and stopping African American drivers in disproportionate numbers because of their race."  Am. Compl., Facts Common to All Counts ¶ 27.[2]

Based upon these allegations, Plaintiffs asserted two claims in their original complaint: the violation the 1866 Civil Rights Act, 42 U.S.C. § 1981 (Count One); and the violation of

---

and practice of stopping African American drivers on "US I-95 in Wicomico County."  ECF No. 13 at 5; see also ECF No. 14 at 2.  No portion of Interstate 95, however, goes through Wicomico County.  In fact, the portion of Wicomico County that is closest to any portion of Interstate 95 is almost 100 miles distant.

[2] Unfortunately, the system employed by Plaintiffs' counsel for numbering the paragraphs in the Amended Complaint is not particularly helpful.  The paragraphs in the introductory sections are not numbered at all but then, for each of the later sections, the numbering begins again with "1."  The Court will attempt to direct the reader to the proper portion of the Amended Complaint by the use of a combination of headings and paragraph numbers.

their constitutional rights under the Fourth, Thirteenth, and Fourteenth Amendments of the United States, brought under 42 U.S.C. § 1983 (Count Two).  The original complaint named as Defendants Sheriff Mike Lewis, in his individual and official capacities, and MSP.  In their Amended Complaint, Plaintiffs added a third cause of action under Title VI[3] of the 1964 Civil Rights Act, § 601, 42 U.S.C. § 2000d et seq., and the additional allegation that "Defendants Maryland State Police Department, and, the Sheriffs [sic] Department of Wicomico County receives [sic] funds from the Federal government pursuant to Title VI of the 1964 Civil Rights Act to maintain Federal and state highways in the State of Maryland including its law enforcement employees." Am. Compl., Facts Common to All Counts ¶ 29.  The Amended Complaint also added "Wicomico County Sheriff's Department" as a Defendant.

## II. LEGAL STANDARD

The standard for a Rule 12(b)(6) motion to dismiss should be well known.  To survive such a motion, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

---

[3] Plaintiff mistakenly identified this claim as one brought under Title IX.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 556. In considering such a motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

**III. DISCUSSION**

    **A. Claims Against Wicomico County Sheriff's Department**

WCSD moved to dismiss the claims against it on the ground that it is not a legal entity capable of being sued. Plaintiffs concede this point. ECF No. 13 at 7. Accordingly, this Defendant will be dismissed.

    **B. Claims Against Maryland State Police**

MSP has moved to dismiss the claims against it solely on the ground of Eleventh Amendment immunity.[4] Plaintiffs concede that MSP is not subject to suit under § 1983. ECF No. 14 at 3. Plaintiffs, however, challenge the applicability of Eleventh Amendment immunity to their § 1981 and Title VI claims.

    The Eleventh Amendment has long been held to bar lawsuits brought by private parties against states and their agencies and

---

[4] In its motion, MSP only specifically identified the § 1981 and § 1983 claims as claims that the Eleventh Amendment would bar. In its reply brief, MSP extends the argument to the Title VI claim as well.

4

departments in federal courts unless the state expressly waived its sovereign immunity and consented to suit. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Defendant MSP is correct that Maryland has not waived its immunity as to § 1983, § 1981, or Title VI claims. State sovereign immunity, however, can also be abrogated by the United State Congress but, to do so, Congress must make that intention "unmistakably clear in the language of the statute." Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96, 101 (1989). Congress has not overridden the States' immunity with respect to Plaintiffs' claims under § 1981 or § 1983. Freeman v. Michigan Dept. of State, 808 F.2d 1174 (6th Cir. 1987) (finding that Eleventh Amendment bars § 1981 action against a state because Congress did not intend to establish state liability when it enacted § 1981); Quern v. Jordan, 440 U.S. 332, 343 (1979) (observing that Congress has not overridden States' immunity in § 1983 cases). Therefore, those claims will be dismissed on the ground of Eleventh Amendment immunity.

As to the Title VI claims, however, Congress has abrogated the States' immunity. In passing the Civil Rights Remedies Equalization Act in 1986, Congress expressly conditioned the receipt of federal funds on a waiver of Eleventh Amendment

5

immunity under certain enumerated federal anti-discrimination statutes, including Title VI. That statute provides:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, <u>title VI of the Civil Rights Act of 1964</u>, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

42 U.S.C. § 2000d-7 (emphasis added). Thus, MSP has no Eleventh Amendment immunity as to Plaintiffs' Title VI claims.

While MSP has no Eleventh Amendment immunity as to the Title VI claim, it is not clear that the Amended Complaint actually states a plausible claim under Title VI. Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Here, the only mention of the receipt of federal funds is Plaintiffs' allegation that "[t]he defendants named herein, the

Maryland State Police Department, Wicomico County Sherriff's Department and [sic] receive funding from the United States Department of Transportation for the repair and maintenance of their highways and federally funded activities to maintain state and Federal highways." Am. Compl., "Jurisdiction."[5] There is no explanation as to why these law enforcement agencies would be receiving federal highway maintenance funds. While the Court at this stage in the litigation must accept as true Plaintiffs' allegations, these allegations skirt the line of plausibility. Given a number of other confusing aspects of the Amended Complaint, discussed below, the Court deems it prudent to dismiss the Amended Complaint and permit Plaintiffs to file a more carefully prepared complaint, should they elect to do so.

### III. Claims Against Defendant Mike Lewis

---

[5] This same allegation was repeated two more times in the Amended Complaint. Am. Compl., "Facts Common to All Counts" ¶ 29 ("Defendants Maryland State Police Department, and, the Sheriffs [sic] Department of Wicomico County receives [sic] funds from the Federal government pursuant to Title VI of the 1964 Civil Rights Act to maintain Federal and state highways in the State of Maryland including its law enforement [sic] employees making them liable for ontentional [sic] racial discrimination and for engaging in policies and practices that cause a disparate impact on African American citizens who drive upon Federally funded highways by arresting them because of their race."); id., Count Three ¶ 3 ("At the time of the stop without probable cause, arrest, search, seizure, and harassments of the plaintiffs' [sic] defendants were engaging in intentional racial discrimination and enforcing their policies and practices which have a disparate impact on African American's [sic] driving on highways maintained by them while being funded by The Federal Government, Department Of Transportation.").

7

Plaintiffs bring claims against Defendant Lewis in his official capacity as Sheriff of Wicomico County, and in his personal capacity. It is well established that a county sheriff in Maryland is a state official, at least when engaged in law enforcement duties. Rossignol v. Voorhaar, 321 F. Supp. 2d 642, 650-51 (D. Md. 2004). For that reason, official capacity suits against sheriffs are treated, for Eleventh Amendment purposes, as suits against the state. Id. Thus, Plaintiffs' § 1981 and § 1983 claims against Lewis in his official capacity are barred by the Eleventh Amendment and will be dismissed.

As to Plaintiffs' Title VI claim against Defendant Lewis, the Court finds that he is not a proper defendant in either his official or personal capacities. Title VI liability is premised on the receipt of federal funds. Because those funds would be received by a governmental agency and not by an individual, courts have uniformly held that "the proper defendant in a Title VI case is an entity rather than an individual." See Mayorga Santamaria ex rel. Doe Children 1-3 v. Dallas Indep. Sch. Dist., Civ. No. 06-692, 2006 WL 3350194 at *48 (N.D. Tex. Nov. 16, 2006) (collecting cases); see also Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352, 1356 (6th Cir. 1996) ("Plaintiff's claim . . . fails because she asserts her claim against Lawson and Weaver and not against the school, the entity allegedly

receiving financial assistance."). Accordingly, the Title VI claim against Defendant Lewis in both his official and individual capacity will be dismissed.

Turning to Plaintiff's § 1983 claim against Defendant Lewis in his personal capacity, Defendant Lewis notes, and Plaintiffs concede, ECF No. 13 at 6, that there is no allegation that Defendant Lewis was present at the scene of the alleged traffic stop. There is no allegation that Defendant Lewis ordered or directed this particular traffic stop, nor that he was even aware that it occurred. Furthermore, there is no respondeat superior liability under § 1983 such that Defendant Lewis could be held liable under that theory for the acts of the police officers at the scene. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Plaintiffs make no argument to the contrary.

Instead, it appears that Plaintiffs are attempting to assert a Monell-type claim against Defendant Lewis. See ECF No. 13 at 6-7. Under Monell, a municipality can be held liable under § 1983 if it causes a deprivation of a constitutional right through an official policy or custom. Monell, 436 U.S. at 690-91. "Municipal policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of

policymaking officials that manifest deliberate indifference to the rights of citizens." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citations omitted). A municipal custom may also arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 435 U.S. at 691.

In their opposition, Plaintiffs contend that "Sheriff Lewis is an authorize policymakers [sic] in this case," ECF No. 13 at 7, and that his ratification of the decisions of his subordinates should be "chargable to the municipality, Sheriff's Department of Wicomico County." Id. To the extent the Amended Complaint supports a Monell claim, however, such a claim would be an official capacity claim. As such, it would be barred by the Eleventh Amendment.

Although it is not clear that Plaintiffs are attempting to raise it, there is a theory of supervisor liability under § 1983 that potentially could reach individuals in their personal capacities. In the Fourth Circuit, a claim for supervisory liability under § 1983 requires the following: (1) "actual or constructive knowledge of a risk of constitutional injury"; (2) "deliberate indifference to that risk"; and (3) "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Carter, 164

10

F.3d at 221. It is important to note, however, that a supervisory liability claim cannot rest on the theory of respondeat superior, rather, liability is premised "on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).

To the extent that Plaintiffs are seeking to assert a claim of supervisory liability under § 1983, the Court finds the allegations contained in the Amended Complaint insufficient. Plaintiffs allege broadly, "Defendants [sic] agents, servants and employees were acting under a policy and custom of tolerating the conduct of their agents, servants and employees of harassing, stalking, illegally arresting, and searching the vehicles of African-Americans for drugs without any probable cause." Am. Compl., Count Two ¶ 4.[6] The Court notes this generalized allegation in the Amended Complaint does not

---

[6] Plaintiffs repeat the general allegation at several other places in the Amended Complaint. See, e.g., Am. Compl., Facts Common to All Counts ¶ 27 ("Defendants have a history of engaging in a pattern and practice of profiling, targeting, harassing and stopping African American drivers in disproportionate numbers because of their race while they are driving on federally funded highways."); Am. Compl., Count One ¶ 6 ("Defendants stopped the plaintiffs as a part of their pattern and practices of stopping African-American males who drive through the state of Maryland for purposes of searching for drugs and criminal activity . . .").

identify what role Defendant Lewis had in forming or supporting the "pattern and custom."  After identifying Lewis as the Sheriff of Wicomico County in their listing of the Parties, Am. Compl., Parties ¶ 2, Plaintiffs make no further mention of Defendant Lewis, whatsoever.  Furthermore, the Court would not necessarily equate a "pattern and custom of tolerating" certain behavior with "deliberate indifference."

Plaintiffs attempt to remedy the vagueness of the Amended Complaint by adding new allegations in their opposition to the motion to dismiss which are not found in the Amended Complaint.  In the opposition, Plaintiffs allege that Defendant Lewis "has carried out" and "has officially sanctioned or ordered the use of the pattern and practice of stopping African-American drivers because of their race.  That he, sanctioned such practices." ECF No. 13 at 4.  Plaintiffs temper those allegations later in their opposition, however, offering simply that Lewis "was aware of a pattern and practice of stopping African-American male drivers" and Plaintiffs then proceed to argue that this awareness alone makes Lewis liable for a violation of constitutional rights.  Id. at 5 (emphasis added).  The opposition further complicates matters in that the alleged pattern and practice referenced in the opposition relates to stopping African-American drivers "on US I-95," which, as

12

mentioned above, goes nowhere near Wicomico County.  See, supra, n.1.[7]

As is evident from the above discussion, Plaintiffs' counsel has exhibited a remarkable lack of care in his filings. In addition to the confusion as to where this alleged incident took place, the Court notes that Plaintiffs' counsel, in his oppositions to both motions, has captioned this as an action against "Wisconsin County Sheriff, et al." The briefings also included some sentences, or sentence fragments, that the Court has yet to definitively decipher. For example, the first page of Plaintiff's Opposition to MSP's motion contains the following: "Since the filing of that motion, and English fonts to be motions to dismiss the original complaint, plaintiffs have filed an amended complaint pursuant to Federal Rule of Civil Procedural 15(a.)."[8]

In light of these questionable causes of action -- poorly pled and supported by confusing facts and argument -- the Court determines that the best course of action is to dismiss the Amended Complaint and permit Plaintiffs' counsel to file, with

---

[7] In their opposition to Defendant Lewis' motion, Plaintiffs make no response, whatsoever, as to the § 1981 claim. To the extent Plaintiff have not abandoned that claim, it suffers similar infirmities as Plaintiffs' § 1983 claim.

[8] The Court suspects that counsel employed some form of voice recognition software or transcription service and never bothered to actually read what was transcribed.

considerably greater care, another amended complaint.  To allow the case to go forward as framed by the Amended Complaint as it now stands would only waste the resources of the parties and the Court.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: May 4, 2011.